Argued and submitted March 30, 2011, convictions on Counts 1 through 7, 10, and 11 reversed and remanded; otherwise affirmed November 7, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD EDWIN BRADLEY, II,
*Defendant-Appellant.*

Washington County Circuit Court
C081099CR; A142466

290 P3d 827

Meredith Allen, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Judge, and Nakamoto, Judge.*

_____
* Brewer, J., *vice* Wollheim, J.

BREWER, J.

**BREWER, J.**

Defendant appeals a judgment of conviction for nine counts of sexual abuse in the first degree, ORS 163.427; two counts of unlawful sexual penetration in the first degree, ORS 163.411; and one count of sodomy in the first degree, ORS 163.405. The indictment alleged 15 counts of sexual offenses against two children. Defendant raises two assignments of error, first to the trial court's denial of his pretrial motion to sever the charges for each victim pursuant to ORS 132.560(3), and, second, to the denial of his motion to exclude one victim's out-of-court statements that the state offered without providing the required pretrial notice under OEC 803(18a)(b).[1] We reject defendant's first assignment of error without discussion. With respect to the second assignment of error, we conclude that the trial court erred in admitting the victim's out-of-court-statements in violation of OEC 803(18a)(b) and that the error was not harmless as to the convictions relating to that victim. Therefore, we reverse and remand for a new trial on Counts 1 through 7 (first-degree sexual abuse), and Counts 10 and 11 (first-degree unlawful sexual penetration), but otherwise affirm.

The relevant facts are as follows. The victims, C and Z, are cousins who are related to a woman with whom defendant cohabited between 1993 and 2000. Counts 1 through 11 alleged crimes against C committed between 1998 and 2000. Counts 12 through 15 alleged crimes committed against Z between 1993 and 1994. The victims' experiences with defendant came to light on the same day in September 2007. Detective Cook interviewed each victim separately on October 19, 2007, and made a recording of the interviews.

---

[1] OEC 803(18a)(b) provides, in part, that the following out-of-court statements are not excluded by OEC 802:

"A statement made by a person concerning an act of abuse * * * if the declarant either testifies at the proceeding and is subject to cross-examination. * * * *No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown.*"

(Emphasis added.)

The prosecutor notified defendant 27 days before trial that she intended to introduce out-of-court statements made by C. The prosecutor's affidavit averred:

"I, [prosecutor], Deputy District Attorney for Washington County, Oregon being first duly sworn, depose and say:

"1. That the State has provided to the defendant, copies of available reports in this case more than fifteen days before trial;

"2. That the foregoing and subsequent reports contain the particulars of statements made by [the victim] that the state intends to offer;

"3. That [the victim] is presently available and expected to testify at defendant's trial;

"4. That [the victim] is a child; and,

"5. That the above referenced statements concern an act or acts of abuse as defined in ORS 107.705 or 419B.005."

In a pretrial hearing, defendant moved to exclude C's hearsay statements under OEC 803(18a)(b) because the prosecutor's notice had not specified which of C's statements the state intended to introduce. The state replied that the notice satisfied the standard articulated in *State v. Leahy*, 190 Or App 147, 151, 78 P3d 132 (2003) ("The notice must convey that the proponent intends to offer the statements, and the notice must identify the particular statements that the proponent seeks to introduce."). The trial court agreed with the state and denied defendant's motion to exclude the statements.

At trial, Detective Cook testified that C made the following out-of-court statements when he interviewed her in October 2007. When C was about nine years old, on at least four occasions, defendant touched her vagina and made her touch his penis with her hands. Defendant touched C's breast on at least three occasions. On one occasion, defendant was naked and rubbed his penis against C's vaginal area while she was wearing underwear. Defendant also inserted his fingers in C's vagina on various occasions. During the incidents, defendant told C not to say anything to her mother; C complied because she was afraid of defendant.

Before her interview with Cook, C had not told anyone but her mother about the abuse.

C's testimony at trial was generally consistent with the out-of-court statements that Cook attributed to her during his testimony. C testified to the following facts. Defendant came into her room on several occasions, maybe once per week, and he touched her inappropriately on at least eight occasions. Every time defendant touched her, he penetrated her vagina with his fingers. She remembered four incidents that were particularly frightening. In one incident, defendant entered her bedroom while she was sleeping and touched her vaginal area with his hand. On another occasion, defendant asked her to go into his room and lie with him, and he made her hold his penis while he rubbed her vagina. In a third incident, defendant penetrated her vagina with his fingers while she was in the top bunk bed in her bedroom and her brother was asleep on the bottom bunk bed. In a fourth incident, defendant lay on top of C without his underwear while touching and penetrating her vagina with his fingers. C could not remember whether defendant ever touched her breast. When asked on cross-examination whether defendant had touched her breast, she said, "To my knowledge, I can't really remember if that was touched. That's—it wasn't like the scariest [part] about [it] if it did happen[.]" On redirect examination, she stated, "I feel like there was a pretty good chance that he did." C also testified that her memory had been better when she talked to Cook; lately, she had been focused on finals and homework. C testified that she had not disclosed defendant's abuse while it was ongoing because she was frightened and embarrassed; nor had she intended to tell anyone before her mother asked her directly after learning about Z's allegations.

The jury convicted defendant of Counts 1 through 7 and 10 and 11 with respect to C, and Counts 12 through 14 with respect to Z. On appeal, defendant renews his argument that the trial court erred in admitting C's hearsay statements, because, in violation of OEC 803(18a)(b), the state provided insufficient notice of the "particulars" of those statements. Defendant notes that the state's notice merely referred him to "available reports" in discovery and

"failed to furnish him with sufficient details that would allow him to identify the statement within the available reports, most significantly, by failing to identify the names of the hearsay witnesses." The state responds that the statute does not require the notice to identify the witnesses and that the notice was sufficient for defendant to prepare and respond to the hearsay. In the state's view, defendant "knew more about the statements than he acknowledges," and "given the simplicity of the allegations, it would have been relatively easy to determine which of [C's] statements would be introduced, and by whom."[2]

We review the adequacy of a notice under OEC 803(18a)(b) for errors of law. *Leahy*, 190 Or App at 151. The requirements of that rule are meant to ensure that an opposing party has a reasonable opportunity to prepare for trial in response to proffered hearsay statements made by subject declarants. *State v. Iverson*, 185 Or App 9, 14, 57 P3d 953 (2002), *rev den*, 335 Or 655 (2003). A statement of intent "to offer child hearsay evidence" does not satisfy the particularity requirement of the rule where it fails to identify the particular statement being proffered. *State v. Olsen*, 220 Or App 85, 89, 185 P3d 467 (2008). Nor does merely providing discovery of statements or furnishing a list of witnesses comply with the requirements of OEC 803(18a)(b). *Leahy*, 190 Or App at 151. Rather, the rule "requires at a minimum that the state identify the witness or the means by which the statement would be introduced" and "the substance of the victim's hearsay statements or how they would be offered." *State v. Chase*, 240 Or App 541, 546-47, 248 P3d 432 (2011).

The facts in *Chase* are similar to the circumstances here. In *Chase*, the state provided the defendant with approximately 53 pages of pretrial discovery, including the transcript of an interview of the victim conducted by

---

[2] The state also argues that any error in admitting the statements was harmless because, although defendant objected to Cook's testimony, he failed to object to the video recording of Cook's interview with C. The state is mistaken; defense counsel specifically referred to the existence of the taped interview in arguing his motion to the trial court. Thus, defendant's objection encompassed all of the out-of-court statements that the state intended to offer with respect to C pursuant to OEC 803(18a)(b).

CARES, a child abuse assessment center, and statements that the victim made to his mother, grandmother, and an aunt concerning the abuse. *Id.* at 544. The state provided the defendant with the following notice: "[T]he foregoing and subsequent reports contain particulars of statements made by [the victim] that the State intends to offer[.]" *Id.* The defendant moved to exclude the statements for failure to satisfy OEC 803(18a)(b), arguing that "the state must not rely on [the defense] to sort through 53 pages * * * to determine what statements in particular the state is wanting to enter." *Id.* at 545. The trial court denied the motion, ruling that the notice was sufficient because it stated to whom the statement was given and from whom the statement would come. *Id.* We reversed, holding that the trial court had erred in admitting the challenged statements because the state had not identified the particular statements that it intended to offer in the notice. *Id.* at 546. We concluded that "simply providing discovery and notice of an intention to offer at trial hearsay statements contained in discovery is not sufficient." *Id.* at 546-47.

As in *Chase*, the state's notice in this case did not identify the particular statements that the state intended to offer or how they would be offered. The notice requirement is not satisfied merely by providing copies of reports and stating, as was the circumstance here, that they "contain the particulars of statements made by [C] that the state intends to offer," and that "referenced statements concern an act or acts of abuse as defined in ORS 107.705 and ORS 419B.05." The sole sanction for violations, as provided by the rule, is exclusion of the offered statements. *Iverson*, 185 Or App at 16. Therefore, we conclude that the trial court erred in admitting the evidence.[3]

We next consider whether defendant was prejudiced by the erroneously admitted evidence. *Chase*, 240 Or at 547. "We will affirm a judgment despite evidentiary error if admitting the evidence is harmless." *Olsen*, 220 Or App at 89. To determine whether the error was harmless, we review all pertinent portions of the record and ask whether

---

[3] Our conclusion is consistent with our analysis in *State v. Wood*, 253 Or App 97, 289 P3d 348 (2012).

there was little likelihood that the error affected the jury's verdict. *State v. Davis*, 336 Or 19, 32-33, 77 P3d 1111 (2003). In that inquiry, we ask whether we can "conclude that the [admissible] facts present such convincing evidence of guilt that it is highly unlikely that there were wavering jurors who would have voted for acquittal but for the * * * inadmissible[] facts[.]" *Olsen*, 220 Or App at 91.

Defendant argues that the error was not harmless because it likely affected the jury's verdict in two ways. First, defendant asserts that, because C testified that her memory was better during her interview with Cook, the hearsay statements—and not C's trial testimony—provided the most persuasive evidence of defendant's guilt with respect to Counts 1 through 11, and the only evidence of guilt regarding Count 7, which contained the charge that defendant touched C's breast.[4] Second, defendant argues that the state relied on the hearsay evidence to bolster the victim's credibility with respect to each of the incidents charged in Counts 1 through 11 by relying on her process of disclosure and the consistency between the victim's testimony and her out-of-court statements. We agree with defendant's first argument as it pertains to Count 7, and we agree with defendant's second argument in its entirety.

As to defendant's first argument, the state urges that the admission of C's hearsay statements was harmless because the victim provided stronger evidence of what occurred in her direct testimony than in her out-of-court statements, with the single exception that she could not recall at trial whether defendant had touched her breast. The state contends that C's testimony about the strength of her memory related only to the breast-touching incident, not to all of the charged incidents, and, thus, the erroneously

---

[4] At trial, the state relied on the hearsay evidence in response to defendant's motion for a judgment of acquittal as to Counts 7, 8, and 9, all of which required proof beyond a reasonable doubt that defendant touched C's breast. The state responded that C's statements introduced in Cook's testimony and the recording provided substantive evidence that defendant touched C's breast in three incidents. The trial court denied defendant's motion based on that evidence and based on C's testimony that she could not recall whether defendant had touched her breast but thought that her memory was clearer when she talked to the detective. The jury acquitted defendant on Counts 8 and 9, so only Count 7 remains at issue on appeal.

admitted statements were merely cumulative of other evidence that was admitted with respect to Counts 1 through 6, and Counts 8 through 11.

To gauge the influence of the erroneously admitted evidence on the verdict in this case, "we begin with a consideration of the evidence that was properly admitted." *Olsen*, 220 Or App at 89. Evidence is cumulative when it demonstrates the same thing as other admitted evidence. *See State v. Klein*, 243 Or App 1, 14, 15, 258 P3d 528 (2011), *aff'd*, 352 Or 302, 283 P3d 350 (2012). Alternatively, evidence is not cumulative when it presents qualitatively different proof than other admitted evidence. *Id.* (excluded evidence was not "different in nature" and, thus, was unlikely to have affected the verdict). In *Davis*, the court noted that the erroneous admission of evidence would be harmless "if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict," or "if the jury would have regarded the * * * evidence as duplicative or unhelpful to its deliberations." *Davis*, 336 Or at 32-33. In *Chase*, we held that there was manifest prejudice where the trial court had erroneously admitted the victim's statements from an out-of-court interview that provided much more detail of the asserted abuse than the victim's in-court testimony, because the hearsay statements provided persuasive evidence of the abuse. *Chase*, 240 Or at 547.

Here, the only nonhearsay evidence that supported the sexual abuse charges concerning C was her own direct testimony. The erroneously admitted statement that defendant touched C's breast was the only evidence that defendant committed the offense charged in Count 7; therefore, the error was not harmless with respect to Count 7. With respect to the remaining counts, C's out-of-court statements were substantially the same as her trial testimony. However, they were not merely cumulative because, as defendant observes, the state relied upon them to bolster C's credibility.

The state contends that C's credibility was not at issue here because defendant presented no theory of the case that cast doubt on her testimony. Thus, the state reasons, even if the hearsay evidence bolstered C's credibility, it

did not provide persuasive evidence that was likely to affect the verdict, because the admissible evidence alone was enough to persuade the jury of defendant's guilt. The record does not support that assertion, however. At several points during the trial, the prosecutor accurately observed that defendant's theory of the case was that the state's witnesses were not credible. For example, defense counsel challenged C's credibility in closing argument; he asked the jury not to trust C's testimony because her testimony was inconsistent and emotionally disconnected, her motive was suspect, and her family had not detected a change in her behavior as a result of the alleged abuse. In particular, defense counsel asserted that (1) C had been inconsistent in alleging that defendant had touched her breasts, (2) she had falsely accused him of having a gun, and (3) she had lied in testifying that she had not talked to Z before trial about their common experience of abuse.

The prosecutor argued in rebuttal:

> "You have consistency over time, remarkable consistency over a remarkably long period of time. You have processes of disclosures that are understandable, and reasonable. That makes sense when you think about this kind of stuff, and how it happens. Believe them."

Thus, the prosecutor drew the jury's attention to the consistency between C's earlier disclosures and her trial testimony. The victim's credibility was important for the state to establish, because no physical evidence was available, and there were no witnesses to the alleged abuse.

In *Iverson*, we held that erroneously admitted evidence, including some of the complainant's first statements about the alleged abuse, significantly reinforced the complainant's trial testimony and was therefore prejudicial. 185 Or App at 16. We concluded that "[t]he properly admitted evidence was not so overwhelming that we [could] say with confidence that the jury would have reached the same conclusions * * * in the absence of the challenged evidence." *Id.* Similarly, in *Olsen*, we held that the erroneous admission of evidence was harmful where it corroborated the victim's in-court testimony of "distant events * * * with specificity." 220 Or App at 91-92. Likewise,

in this case we cannot say that the erroneously admitted evidence was unlikely to have affected the verdict.

In sum, the admission of the challenged statements was not harmless because it injected into the record the only evidence that defendant committed the offense charged in Count 7, and it bolstered C's credibility concerning the other charged offenses involving C. Because we cannot say that there was little likelihood that the erroneously admitted hearsay evidence affected the verdict with respect to C, we reverse defendant's convictions on Counts 1 through 7, and Counts 10 and 11, and remand for a new trial as to those charges.

Defendant does not argue that his second assignment of error applies to his convictions on Counts 12, 13, and 14, where Z was the victim. Similarly, in *State v. Freitas*, 243 Or App 231, 259 P3d 46 (2011), *rev den*, 351 Or 545 (2012), the record did not show that the defendant's convictions for sexual abuse of one victim were based on evidence that had been erroneously admitted with respect to a different victim in the same case; accordingly, we concluded that the error did not require reversal of the convictions involving the second victim. *Id.* at 238-39. Here, the state likewise did not rely on the inadmissible hearsay evidence to prove the offenses involving Z. Thus, we affirm those convictions.

Convictions on Counts 1 through 7, 10, and 11 reversed and remanded; otherwise affirmed.